HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NORMAN J. ENGLAND and ROXANNE ENGLAND, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>MACK TRUCKS, INC., a Pennsylvania Corporation; and VOLVO TRUCKS NORTH AMERICA, INC., a Delaware Corporation; KYSOR SNYDER, a Michigan Corporation, formerly dba SNYDER TANK, INC., a defunct Michigan Corporation,<br><br>Defendants. | Case No.C07-5169-RBL<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This matter comes before the Court on behalf of Defendants Mack Trucks, Inc., Volvo Trucks North America, Inc., and Kysor Snyder's Motion for Partial Summary Judgment. [Dkt. # 34 at 1]. Plaintiffs underlying personal injury claim arises under Washington law; jurisdiction is based on diversity. The decision here is limited to whether the Court should dismiss Plaintiffs' claim for damages in the form of lost wages accruing after March 20, 2006.[1] Having reviewed the parties' submissions and determining that oral argument is not necessary for the disposition of this motion, the Court hereby DENIES Defendants' motion. The reasons for the Court's order are set forth below.

---

[1] In a reply brief the defense moved to strike the Vocational Evaluation of Barbara Berndt and all references thereto. [Dkt. #42]. After giving appropriate weight to this argument, the motion to strike is DENIED.

ORDER
Page - 1

## I. Facts

The following alleged facts are set forth in a light most favorable to the non-moving party: On January 25, 2005, Plaintiff, Norman J. England, then employed as a dump truck driver for Lloyd Enterprises ("Lloyd") in Federal Way, Washington, sustained an injury to his left knee when a step broke as he was exiting the vehicle. [Dkt. # 38 at 3]. Plaintiff had previously sustained two work-related injuries to his left knee for which he filed claims and was allowed benefits. [Dkt. # 43, Ex. 1 at 7; Dkt # 39, Ex. 4 (Voc. Eval) at 14, 15]. Due to the most recent injury, however, Plaintiff claimed he could no longer perform the duties of a driver for Lloyd. [Dkt. # 43, Ex. 2 (N. England Dep.) at 30; Ex. 1 at 8]. He alleged to have difficulty walking or standing for long periods of time, and even sitting down because of the need to elevate his leg. [Dkt. # 43, Ex. 1 at 8]. The Plaintiff consulted with numerous physicians who confirmed the severity of his injury and ultimately advised that he must undergo a total knee replacement surgery as the next course of treatment. [Dkt. # 43, Ex. 1 at 10-12]. Doctors have also restricted Plaintiff's driving to no more than fifteen (15) minutes at a time. [Dkt. # 39 at 32].

Following his injury, Plaintiffs (Mr. and Mrs. England) claimed that financial difficulties required them to sell their Puyallup home and relocate to a more affordable area–namely, Hoquiam, Washington–a small town located on the coast. [Dkt. # 38 at 3]. It is unclear from the record when exactly Plaintiffs moved to Hoquiam, but according to Plaintiffs they put the house up for sale shortly after the injury. [Dkt. # 38 at 3].

As of April 2005, a vocational counselor began meeting with the Plaintiff and contacted his employer, which offered him a job as a maintenance deliverer beginning in May. [Dkt. # 43, Ex. 1 at 8]. Plaintiff declined the offer because of his knee injury. [*Id.*] Subsequently, Lloyd proposed several additional jobs for Plaintiff, but his physicians continually raised issues regarding their viability due to his knee. [*Id.*]. On March 9, 2006, a modified shop assistant position was offered to the Plaintiff and was to begin on March 21, 2006. [*Id.* at 9]. This job was approved by Plaintiff's doctor, although he expressed concern about the long drive from Hoquiam to Federal Way. [*Id.*]. Plaintiff refused this offer on the ground that the drive from Hoquiam to Federal Way was too long (approximately 80 miles) and that it was too expensive to move back to the area. [Dkt. #38, at 4].

Contrary to the advice of his doctors, Plaintiff has yet to undergo corrective surgery to repair his knee and enable his return to his work as a driver. Moreover, he is yet to secure a job in Hoquiam and both Plaintiff

and his wife admit he is not actively seeking employment. [Dkt. # 39, Ex. 2 at 7; Ex. 3 at 10]. He has not worked since the injury on January 25, 2005. [Dkt. # 39, Ex. 4 at 14].

## II. Summary Judgment Standard

Summary judgment is only appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catreet*, 477 U.S. 317, 324 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy*, *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995)

## III. Duty to Mitigate Damages

The duty to mitigate damages is a firmly established principle of virtually every jurisdiction. It requires a claimant to exercise reasonable diligence in finding other suitable employment. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)[2]; *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980). The duty to mitigate damages, also known as the doctrine of avoidable consequences, is similarly well-rooted in Washington. *See, e.g. Hogland v. Klein*, 49 Wn.2d 216, 221, 298 P.2d 1099 (1956); *Cobb v. Snohomish County,* 86 Wn. App. 223, 230, 935 P.2d 1384 (1997) (explaining that the doctrine of avoidable consequences "prevents recovery for damages the injured party could have avoided through reasonable effort[s]"under the circumstances.).

The duty is not absolute. *See Kubista v. Romaine*, 87 Wn.2d 62, 67, 549 P.2d 491 (1976); *Sutton v. Shufelberger*, 31 Wn. App. 579, 581, 643 P.2d 920 (1982); *see also Desimone v. Wash. Compressed Gas Co.*, 23 Wn.2d 876, 884, 162 P.2d 808 (1945) (noting the doctrine does not apply to nuisance or intentional torts).

---

[2]"Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided." *McCormick*, C., Law of Damages 127-58 (1935).

ORDER
Page - 3

Moreover, Washington Courts have held that a "wide latitude of discretion must be afforded [the injured party] and if a choice of two reasonable courses presents itself, a person whose wrong forced the choice, cannot complain that one rather than the other is chosen." *Hogland*, 49 Wn.2d at 221 (emphasis omitted).

The duty applies to claims for lost wages. *Kubista*, Wn.2d 62 at 67. The burden of proof lies with the party asserting the claim of an unreasonable failure to mitigate damages. *Id.* at n.1.

## IV. Discussion

The defense makes a strong argument that Plaintiff has failed to meet his duty to mitigate damages. Plaintiff has not worked since the date of his injury on January 25, 2005; he has yet to undergo the corrective knee surgery that would enable him to return to his line of work; and perhaps most compelling, both Mr. and Mrs. England admit that he is not actively seeking employment in Hoquiam. However, the question before the Court is whether Plaintiff's refusal to take the medically approved job offer in Federal Way constitutes a failure to mitigate damages as a matter of law. The basis for his refusal is that the commute from Hoquiam to Federal Way is too long in light of his knee injury and because it is not financially feasible to relocate.[3] Under the summary judgment standard we are compelled to accept these statements as true.

Defendants urge the Court to defer to the conclusions of the Washington State Department of Labor and Industries (the "Department"). [Dkt. # 34 at 5-6]. The Department ruled Mr. England was not entitled to time loss compensation after March 20, 2006, because he refused to take the medically approved job. [Dkt. # 43 at 14]. In rejecting Mr. England's reasons for declining the position, the Department relied on WAC 206-19A-010(4), which states: "an injured worker's relevant labor market is where she or he was last gainfully employed." We have given adequate consideration to the Department's conclusion, but it is not binding on this Court. In this personal injury claim for damages Washington law controls.

In Washington it is not clear whether a Plaintiff must relocate in order to mitigate damages. While there is no case law directly on point, Washington law does not suggest an absolute duty to move exists. For instance, in a wrongful discharge case the Washington Supreme Court commented in *Holton v. Hart Mill Co.*, that the duty to mitigate is limited to "obtaining other similar employment in the same locality." 24 Wn.2d 493, 497, 166 P.2d 186 (1946). The court also stated in a noncompetition agreement case that "[t]he doctrine of avoidable consequences only requires the [former] [e]mployee to act reasonably," which did not require the

---

[3] The Court notes that this explanation makes Plaintiff's financial records discoverable.

plaintiff to search for a similar position outside the 75-mile radius restriction of his former job. *Labriola v. Pollard Group, Inc.,* 152 Wn.2d 828, 841, 100 P.2d 791 (2004).

Federal employment discrimination cases appear consistent with this view. In *Coleman v. City of Omaha*, the Eighth Circuit held that the claimant "cannot be required to move from his home 'in order to reduce damages caused by the [defendant's] unlawful acts'" and that the issue was sufficient to present the question of mitigation to the jury. 714 F.2d 804, 847 (8th Cir. 1983) (quoting *Hegler v. Board of Education,* 447 F.2d 1078, 1081 (8th Cir. 1971)). Similarly, in *Rasimas v. Michigan Dept. of Mental Health*, the Sixth Circuit stated that a claimant has not failed to make a reasonable effort to mitigate damages where he refused to accept employment that is an unreasonable distance from his residence. 714 F.2d 614, 625 (6th Cir. 1983). Although these cases are distinguishable from the case before us, their message is clear and persuasive: the duty to mitigate damages only requires the Plaintiff to act reasonably. When reasonableness of a party's conduct constitutes a material fact, summary judgment is usually an inappropriate disposition. *See Morris v. McNicol*, 83 Wn.2d 491, 496, 519 P.2d 7 (1974); *see also Sutton,* 31 Wn.App. at 582 (holding that an issue as to an injured party's duty to mitigate damages is an appropriate question for the jury).

Mr. England declares he was unable to accept the medically approved job offer because the commute was too long, the drive would be too hard on his knee, and it was not financially viable to move back to the area. The Plaintiffs' diligence in finding other suitable employment is seemingly nonexistent. This Court must, however, view the evidence in the light most favorable to the Plaintiffs. It cannot rule as a matter of law that Mr. England failed to mitigate his damages. Therefore, Defendants' Partial Motion for Summary Judgment is DENIED. [Dkt. # 34 at 1].

IT IS SO ORDERED.

Dated this 16th day of January, 2008.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page - 5